IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

```
DOUGLAS H. EFFERTZ,            )
                               )
               Plaintiff,      )
                               )
vs.                            )    Case No. 08-1061-WEB
                               )
MICHAEL J. ASTRUE,             )
Commissioner of                )
Social Security,               )
                               )
               Defendant.      )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On May 10, 2007, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 14-25).  Plaintiff is insured for disability insurance benefits through December 31, 2005 (R. at 16).  At step one, the ALJ found that plaintiff engaged in substantial gainful activity until August 4, 2004 (R. at 16).  At

4

step two, the ALJ found that plaintiff had the following severe impairments: scoliosis, degenerative joint disease of the cervical spine and AIDS.  The ALJ also found that plaintiff had a nonsevere depressive disorder (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 23).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 24-25).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III.  Did the ALJ err in his finding that plaintiff's mental impairments were not severe?**

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect

on his or her ability to do basic work activities.[1]  <u>Williams</u>, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ found that plaintiff had a nonsevere depressive disorder (R. at 16).  Specifically, the ALJ found that plaintiff had only mild restrictions in activities of daily living (R. at 18), mild difficulty maintaining social functioning (R. at 18-19), mild difficulty maintaining concentration, persistence, or pace (R. at 19), and no repeated episodes of extended decomposition (R. at 19).  When the ALJ rates the claimant as having only mild difficulties in the first three functional areas and none in the fourth area, the ALJ may generally conclude that the mental impairment(s) are not severe unless the evidence otherwise indicates.  20 C.F.R. 404.1520a(d)(1) (2008 at 373).

The ALJ relied on a psychological examination performed by Dr. Kohrs, a psychologist.  Dr. Kohrs described plaintiff's mood as lethargic, and noted that plaintiff reported insecurity, crying spells, and anxiety attacks of being alone.  Plaintiff described sleep and appetite as good.  Dr. Kohrs stated that plaintiff gave the impression of being depressed.  Dr. Kohrs found no evidence of a thought disorder.  He found plaintiff's attention and concentration to be within the normal range.  Recent and remote memory were found to be grossly intact.  Intellectual functioning was rated within the average range (R.

at 220).

Under activities of daily living, Dr. Kohrs indicated that plaintiff cares for his own personal and hygiene needs. Plaintiff is able to drive. He does oil paintings, cooks, cleans, does laundry and grocery shopping. Plaintiff's social life consists of beginning to meet some people, but is primarily limited to family members (R. at 220). Plaintiff is now living with a friend (R. at 219).

Dr. Kohrs assessed plaintiff as follows:

> He has the cognitive ability to learn, concentrate, and carry out basic work routines. Although he reports concentration limited to 15 minutes, he had no difficulty throughout this interview of 50 minutes with concentration...Limitations to employment appear to be medical problems...

(R. at 221). Dr. Kohrs diagnosed plaintiff with depression due to medical problems, generalized anxiety disorder and dependent personality disorder. He assessed plaintiff with a GAF of 50.[2]

---

[2]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

The ALJ also relied on the state agency medical consultants who reviewed the evidence and concluded that plaintiff did not have a severe mental disorder (R. at 23). On the Psychiatric Review Technique form prepared by Dr. Blum on January 4, 2006, Dr. Blum referenced the findings contained in the psychological evaluation of Dr. Kohrs, and concluded that plaintiff's depression and mental symptoms are not severe (R. at 222, 234, 236). Dr. Cohen reviewed the findings of Dr. Blum and the evidence in the file on May 31, 2006, and confirmed the findings of Dr. Blum (R. at 249).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The ALJ discussed the evidence in detail in support of his findings that plaintiff's mental impairment was not severe, including the opinions of three psychologists (R. at 17-19, 23). By contrast, plaintiff presented no medical opinion evidence that plaintiff had a severe mental impairment.

Plaintiff indicates that Dr. Kohrs found that plaintiff had a GAF of 50, which indicates serious impairments. The ALJ noted this fact, and then stated that the GAF score was presumed to primarily reflect Axis IV factors of psychosocial stressors and economic problems given Dr. Kohrs' essentially normal findings in

9

most areas (R. at 23). Dr. Kohrs opined that plaintiff had the cognitive ability to learn, concentrate, and carry out basic work routines, and that plaintiff's only limitations to employment appeared to be medical problems. In addition, a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record. Petree v. Astrue, 260 Fed. Appx. 33, 42 (10th Cir. Dec. 28, 2007). In the case of Eden v. Barnhart, 109 Fed. Appx. 311 (10th Cir. Sept. 15, 2004), the claimant had been given a GAF score of 50. However, no one who rated his GAF indicated that claimant could not work. The court stated that because a score of 50 may not relate to a claimant's ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities. 109 Fed. Appx. at 314. See Camp v. Barnhart, 103 Fed. Appx. 352, 354 (10th Cir. June 30, 2004)(claimant was given a GAF score of 50, but the mental health evaluator did not indicate that claimant's GAF score impaired his ability to work; the court held that the score, without evidence it impaired claimant's ability to work, does not establish an impairment). In the case of Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004), the court indicated that, standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work. The claimant's impairment, for

example, might lie solely within the social, rather than the occupational sphere.

Although Dr. Kohrs indicated that plaintiff had a GAF of 50, Dr. Kohrs did not find any limitations to employment due to plaintiff's depression, anxiety disorder or personality disorder. In fact, Dr. Kohrs stated that plaintiff's only limitations to employment appeared to be medical problems. Dr. Blum and Dr. Cohen reviewed the record, including the evaluation by Dr. Kohrs, and concluded that plaintiff did not have a severe mental impairment. The GAF score of 50 assigned to plaintiff by Dr. Kohrs, standing alone, without further explanation, does not establish an impairment interfering with plaintiff's ability to perform basic work activities. There is no medical opinion evidence that the GAF score of 50 indicates a severe mental impairment, or that plaintiff has a severe mental impairment. The court finds that substantial evidence in the record supports the conclusion of the ALJ that plaintiff did not have a severe mental impairment.

Finally, the court would note that in the recent case of Brescia v. Astrue, 2008 WL 2662593 at *1-2 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to

11

designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  Again, in Hill v. Astrue, 2008 WL 3339174 at *2 (10th Cir. Aug. 12, 2008), the court held that the failure to find that additional alleged impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In this case (Effertz), the ALJ stated that his RFC findings incorporate all of plaintiff's limitations that the ALJ determined to be credible, and which were related to all of plaintiff's medically determinable impairments, even those that were determined to be nonsevere (R. at 23).  Plaintiff does not allege any errors by the ALJ in his RFC findings.  Furthermore, there was no medical opinion evidence that plaintiff had mental limitations which impacted plaintiff's ability to work.  The ALJ discussed and relied on the evaluations of Dr. Kohrs, Dr. Blum, and Dr. Cohen when explaining his RFC findings (R. at 23).  The court finds no error by the ALJ in his evaluation of plaintiff's mental impairment or its impact on plaintiff's ability to work.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be affirmed.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on October 2, 2008.

>                    s/John Thomas Reid
>                    JOHN THOMAS REID
>                    United States Magistrate Judge